*191 OPINION.
SteRnhagen:
The petitioner, by its petition, sought to overcome the respondent’s determination on three points: (1) That its statutory invested capital under section 326 should include $300,000 more than the respondent has allowed, by reason of the transactions which resulted in its acquisition of trade name and good will; (2) that, failing this, the evidence shows an abnormal condition of capital or income under section 327 (d) justifying special assessment by the comparative method of section 328, the measure of which is reserved by the parties for future hearing, if necessary, under Rule 62; and (3) that its net income should be reduced by a deduction under section 234 (a) (7) for exhaustion of its right to use its name.
1. The first question was expressly withdrawn by petitioner at the opening of trial and counsel stated that no evidence would be introduced on the point. In their brief, petitioner’s counsel seek to retract their waiver because of a misunderstanding of the law. To treat the issue as restored would be wholly unwarranted and unfair. Trial was not had nor argument submitted on this issue, and, for all we know, respondent’s defense was shaped to fit a trial with this issue removed. This was unlike an attempt to stipulate the legal effect of admitted or agreed facts. Such a stipulation would not prevent consideration and decision on the point or counsel’s presentation of a legal view at variance with the stipulation. Ohio Cloverleaf Dairy Co., 8 B. T. A. 1249. Here the only stipulation was in respect of certain facts, documents and data placed in the record after the express waiver of the first issue and directed only at the two remaining issues. Both the facts and the. law of the first issue were eliminated. To this question, therefore, the Board gives no consideration and leaves the petitioner in the position determined by respondent in the notices of deficiency.
2. The evidence clearly shows that the petitioner from the time of its organization in 1917 was in an unique position which warrants the *192 finding that there were abnormal conditions affecting its capital or income during the excess-profits-tax years here in question. Its invested capital, although substantial, was only remotely responsible for its earnings. The profits were attributable in large measure to conditions not properly reflected therein, such as its reputation of long standing, the character of its personnel, and other intangible factors commonly included in good will. The corporate name, however well regarded, was, we think, of decidedly less importance than the personnel. The practice exclusively to contract on a cost-plus basis, with the client providing' current outlay, was unlike that of any other taxpayer in the industry. This was 'not a high rate of profit on a nominal capital; it was a profit largely on something other than invested capital. Irrespective of whether its exclusion from invested capital be directly because of section 331, its abnormality is otherwise apparent. While exclusion by reason of section 331 would not necessarily be a statutory abnormal condition, Morris & Co., 1 B. T. A. 704, such exclusion would also not be a complete obstruction to special assessment where abnormal conditions plainly existed which made the normal plan of the excess-profits tax fairly inapplicable. Clarence Whitman & Sons, Inc., 11 B. T. A. 1192.
There is, in our opinion, ample ground for further consideration of special .assessment as contemplated by Buie 62.
3. The petitioner’s claim to a deduction under section 234 (a) (7) of a reasonable allowance for exhaustion of its right to use its name is not well founded in law or in fact. Omitting, as unnecessary, any decision as to the nature of the transaction by which this right was ostensibly acquired, or the consideration therefor, it is in any event plain that it was acquired simultaneously and compositely with the good will. Good will, being of indefinite or unlimited duration, is not ordinarily subject to exhaustion and is not susceptible of amortization out of income as contemplated by the statutory deduction. In the absence of segregation of cost as between the alleged trade name and the good will, there is no basis to which annual depreciation of the former could be applied. Market Supply Co., 3 B. T. A. 841; Charles P. Limbert Co., 9 B. T. A. 1390. The evidence does not justify the view urged by petitioner that all the cost is applicable alone to the right to use the name, and it may be doubted whether in its nature this is demonstrable by evidence. See American Steel Foundries v. Robertson, 269 U. S. 372. It may also be doubted whether the formal segregation by the parties in 1917' of the good will and name from the other enumerated assets has any recognizable basis. See Metropolitan Bank v. St. Louis Dispatch Co., 149 U. S. 436, 446; In re Leslie-Judge Co., 272 Fed. 886; certiorari denied, 256 U. S. 784. It is by no means clear from the New York decisions whether, in view of the identity of the incorporators, who *193 chose the name, and the partners in the existing firm, who knowingly permitted the name to be taken, the petitioner could, if the Eidlitz brothers voluntarily dissociated themselves from the corporation, be prevented from using its established name or whether after the death of the survivor of the two Eidlitz brothers there would be damage to anyone else or right in anyone else ever to complain. See White v. William G. White, 145 N. Y. S. 743; Wyatt v. Hall's Portrait Studio, 128 N. Y. S. 247.
There is further practical difficulty in petitioner’s theory, even if the contract for separate purchase of the right to use the name be unquestioned as to its effect. The name was to be used for three years after the Eidlitz brothers’ withdrawal. This withdrawal was taken by petitioner at its latest date, which would be the date of death of the surviving brother, and the longest period was taken as the probable mortality period shown by an experience table. Treating these factors as accepted data and treating the formula as a method for arriving at a period of performance of the contract, there is still the fact that no actual exhaustion of investment is to be anticipated to justify a deduction out of income. The statutory deduction for exhaustion is for the purpose of anticipating annually an inevitable or reasonably probable disappearance of capital investment and setting up out of income a fund to equal the original investment when it disappears. Here, however, the petitioner has three years after the withdrawal of the Eidlitz brothers and the consequent loss of the advantage inherent in their participation to adjust itself to a new name, to take all the steps possible to retain the substance of the investment, to protect itself against the loss which the exhaustion deduction contemplates. We disregard the later voluntary two-year extension of this adjustment period.
Under these circumstances, we are of opinion that there is no “ reasonable allowance for exhaustion of property used in the business ” to which the petitioner is entitled for any of the years in question, and the respondent’s determination of petitioner’s net income is sustained.
These being reasons adequate, we think, to support the decision, it is unnecessary to give extended consideration to the apparent simulation of substantial transactions in an attempt to fit them into the pattern of the revenue act. However high the motive, the refinements of legal theory may not always command recognition if they are inconsonant with the normal course of the law, and when the arguments as to the sanctity of the particular methods used are pressed too far it requires the application of the useful though indefinite doctrine that form must give way to substance.
The proceeding will be held awaiting further action by the parties under Rule 62.